**SO ORDERED.**

**SIGNED this 30 day of June, 2006.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

| | |
|---|---|
| **FRANCES CLEO ALEXANDER,** | **06-00324-8-JRL** |
| **RUTH ANISTEAD BOWENS,** | **06-00147-8-JRL** |
| **BARBARA ANN BRASWELL,** | **06-00318-8-JRL** |
| **GLADYS PARKER BULLUCK,** | **06-00149-8-JRL** |
| **LOUISE VAUGHAN CHERRY,** | **06-00089-8-JRL** |
| **BRIAN ELLIOT, NATALIE ELLIOT,** | **06-00811-8-JRL** |
| **JOHN ROBERT EZELL, MARILYN LABIANO EZELL,** | **05-10689-8-JRL** |
| **CLEVELAND RUDOLPH FOSTER, JR., BRENDA BELL FOSTER,** | **06-00300-8-JRL** |
| **GERTRUDE PRICE JOHNSON,** | **05-10652-8-JRL** |
| **MARVIN NATHANIEL JOHNSTON, HILDAGARDE HARRISON JOHNSTON,** | **05-10625-8-JRL** |
| **DAVID ANTHONY JONES, LORIE WILSON JONES,** | **05-10597-8-JRL** |
| **JOHN MICHAEL JORDAN, TAMMIE PATTERSON JORDAN,** | **05-10617-8-JRL** |
| **JAMES KNIGHT, JR., CAROLYN JEAN KNIGHT,** | **06-00128-8-JRL** |
| **ROBIN WAYNE NORDAN,** | **05-10699-8-JRL** |
| **DARLICIA CATRINA POPE,** | **06-00027-8-JRL** |
| **GERALDINE RICHARDSON,** | **06-00049-8-JRL** |
| **JESSE JAMES RUDD,** | **06-00064-8-JRL** |
| **ROBERT MARTIN STOKELY, CYNTHIA MURDOCH STOKELY,** | **05-10598-8-JRL** |
| **RONALD LAWRENCE THOMAS, TRUDI SAMANTHA THOMAS,** | **06-00074-8-JRL** |
| **TINA LOUISE WATSON,** | **05-10612-8-JRL** |
| **RICHARD DEAN WEBB, CRYSTAL DAWN WEBB,** | **06-00098-8-JRL** |
| **AGNES DENTON WHITLEY,** | **06-00299-8-JRL** |
| **ADRIAN GERAND WILLIAMS, EVELYN DAVIS WILLIAMS,** | **05-10619-8-JRL** |

| | |
|---|---|
| NADINE EATMON WILSON, | 06-00177-8-JRL |
| VERA BURTON WOODARD, | 05-10679-8-JRL |

**Debtors.**

___

## **ORDER**

These cases are before the court on the debtors' objections to the trustee's motions for confirmation. On April 27, 2006, the court conducted a hearing on these matters in Wilson, North Carolina. Because resolution of the issues before the court will directly impact the functioning of Chapter 13, the court opened the hearing to all interested Chapter 13 debtors, trustees, and creditors in the district and authorized the filing of briefs before and after the hearing.[1]

In this district, after reviewing a debtor's petition, schedules, statements, proposed plan, and information provided at the § 341 meeting, the trustee will move for confirmation of a plan that he asserts is consistent with the requirements of Chapter 13. The motion may or may not incorporate all of the provisions from the debtor's proposed plan. The debtor is free to object to the trustee's motion as is any other party in interest.

In the subject cases, the debtors propose plans with fixed durations subject to early termination. The early termination would take effect once the allowed secured claims, priority claims, and administrative claims required to be paid inside the plan are paid in full plus payment of any required dividend to non-priority, unsecured creditors. The proposed plans include the following language:

> This Chapter 13 plan will be deemed complete and shall terminate and a discharge shall be entered, <u>at the earlier of</u>, the expiration of said duration [the estimated proposed duration

___

[1] The last brief was filed June 9, 2006 by eCast Settlement Corporation.

of the plan] or the payment in full of: (1) The following claims, proposed to be paid "inside" the plan, to the extent "allowed": (1) Arrearage claims on secured debts, (ii) Secured claims (not including those to be paid "outside" the plan), (iii) Unsecured priority claims, (iv) Cosign protect claims (only where the Debtor proposes such treatment), plus (2) The required divided to unsecured, non-priority creditors, if any is required by 11 U.S.C. 1325(b). (For purposes of 11 U.S.C. 1325(b)(1)(B), "unsecured creditors" shall be deemed to mean all unsecured creditors, including both priority and non-priority unsecured creditors.)

In the motions for confirmation filed by the Chapter 13 trustee in these cases, the above language is not incorporated. The debtors, therefore, object to the trustee's motions for confirmation in these cases. The debtors assert that, in formulating a plan, they must estimate how much will be due and allowed on secured, priority, and administrative claims. The debtors, however, contend that claims are often filed and allowed in amounts less than estimated. The debtors argue that, by failing to include the possibility of early termination in the motions for confirmation, the trustee is requiring a fixed duration based upon a "pot plan" formula approach, disregarding the possibility that some claims might be allowed for less than anticipated.

The trustee asserts that, by including the early termination provisions in their proposed plans, the debtors are attempting to end the plans sooner than the applicable commitment period without full payment to unsecured creditors. The trustee contends that the applicable commitment period functions as a temporal period of either 3 or 5 years depending upon a debtor's current monthly income. 11 U.S.C. § 1325(b)(4). "Applicable commitment period" and "current monthly income" are new terms under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The trustee argues that, based upon the plain language of 11 U.S.C. § 1325(b)(4)(B), the only way a plan can be shorter than the applicable commitment period is if all allowed unsecured claims are paid in full over a shorter period of time. The debtors disagree with the trustee's interpretation of "applicable commitment period" and assert that the term

3

functions as a multiplier rather than as a period of time.

While the trustee made no specific objection to the debtors' calculations of disposable income under BAPCPA, he frowns upon the outcome resulting from those calculations, disagrees with the debtors' interpretation of "projected disposable income," and asserts that the debtors are violating the good faith requirement under § 1325(a)(3) by not proposing plans that make substantial contributions to unsecured creditors for the applicable commitment period.

### Calculation of "Disposable Income"

Disposable income is now defined as "current monthly income . . . other than child support payments, foster care payments, or disability payments for a dependent child . . . less amounts reasonably necessary to be expended . . . ." 11 U.S.C. § 1325(b)(1)(2). Current monthly income is a new term under BAPCPA defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)" during the 6-month period preceding the commencement of the case or a date upon which the current income is determined by the court. 11 U.S.C. § 101(10A)(A). CMI excludes "benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism . . . or domestic terrorism . . . ." 11 U.S.C. § 101(10A)(B).

Prior to the passage of BAPCPA, in order to arrive at a disposable income figure for any Chapter 13 debtor, one would subtract monthly expenses reported on Schedule J from monthly income reported on Schedule I. The court had discretion regarding whether the listed expenses were reasonably necessary for the support of the debtor and any dependents. Now, there is a bifurcated process that hinges upon whether a debtor's current monthly income is above or below the median family income for a similarly-sized

4

household. In addition to Schedule I and J, Interim Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a debtor to file a statement of current monthly income prepared on the official form, known as "Form B22C, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." The debtor reports her current monthly income in Part I of Form B22C and determines whether her currently monthly income is above or below the median family income in Part II of Form B22C. If a debtor's currently monthly income, multiplied by 12, is greater than the median family income of similarly-sized households, then "amounts reasonably necessary to be expended" are determined in accordance with § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Thus, an above-median income debtor calculates her disposable income figure using the remainder of Form B22C taking allowed deductions under § 707(b)(2). To arrive at a disposable income figure for a below-median income debtor, one takes the debtor's currently monthly income from Part I of Form B22C and subtracts the total monthly expenses from Schedule J. While there is rigidity in arriving at the disposable income figure for the above-median debtor, the court has more flexibility in determining whether the expenses of the below-median income debtor are reasonably necessary.[2]

At the hearing, three of the four Chapter 13 trustees in this district reported their frustrations with this new calculation method, noting that the old I and J comparison revealed a more accurate depiction of

---

[2]Difficult questions beyond the reach of this opinion remain about whether BAPCPA changes the manner in which Schedule J expenses should be fairly computed for below-median income families. Because disposable income is now an amount that goes only to unsecured creditors rather than for the entire plan payment, must below-median income debtors also be allowed to subtract their secured and priority payments to be made through the plan as reasonable and necessary expenses? And do basic notions of equal protection require that expenses deemed by statute to be reasonable and necessary for above-median income debtors also be allowed for below-median income debtors, although pre-BACPA courts routinely denied them this treatment? These are questions for another day.

disposable income than the calculation method employed under the new law. A debtor who may have had disposable income under the old law may now have little or no disposable income using the new calculation method. The bulk of the cases before the court involve below-median income debtors, and the results seem to differ based upon individualized circumstances regarding whether a below-median income debtor has more disposable income under the old or new law.[3] However, for the seven cases of above-median income debtors, the debtors uniformly have less disposable income using the new calculation method.[4] The trustees reported that this is the typical result for above-median income debtors under the new law. Perhaps Congress, in an effort to make higher income debtors pay more to their unsecured creditors, unwittingly reached the opposite result.

Despite criticisms that the old law was better, in discerning congressional intent, the starting point is the "existing statutory text" and "not the predecessor statutes." Lamie v. U.S. Trustee, 540 U.S. 526, 533 (2004). "When the statute's language is plain, the sole function of the court—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Id. The court finds that § 1325(b)(2)-(3) plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law. One of the Chapter 13

---

[3] Attachment A is a chart showing the computation of disposable income in each of the cases consolidated for argument. Neither the trustee nor any creditor has challenged the accuracy of these figures. *See* Attachment A. For example, David and Lorie Jones would have $520.00 of disposable income under the old law, but they have $269.91 of disposable income using the new § 1325(b) calculation method; whereas, Richard and Crystal Webb would have $403.00 of disposable income under the old law, yet they have $1,233.65 of disposable income under the new law.

[4] *See* Attachment A. For example, under the old law, Robert and Cynthia Stokely would have $774.00 of disposable income. Under the new law, their disposable income figure is $66.38. John and Tammie Jordan would have $1,195.00 of disposable income under the old law, but their disposable income figure is -$105.74 under the new law.

6

trustees as well as a creditor's attorney appearing at the hearing argued that calculating disposable income under BAPCPA fails to curtail abuse as intended and leads to such absurd results that the new formula should be disregarded and supplanted by the old I and J comparison for all debtors.

The concept of disposable income as the bankruptcy system knew it has changed. However, this court will not override the definition and process for calculating disposable income under § 1325(b)(2)-(3) as being absurd simply because it leads to results that are not aligned with the old law. *See* In re Barr, 341 B.R. 181, 185 (Bankr. M.D.N.C. Apr. 5, 2006)("While many sources question whether sections 707(b)(2) and 1325(b) represent a fair and effective approach to catching abusers of the bankruptcy system or to insuring that debtors who can pay do pay, the court does not believe that the result in this case of applying section 1325(b)(3) as written can be rejected as being absurd"). As noted by authors Culhane and White, Chapter 13 trustees notified Congress of their concerns regarding this legislation before it was passed:

> Chapter 13 trustees recognized early on that this redefinition of disposable income meant some high-income debtors would pay less than they would have under the variant judicial tests and local legal culture that previously measured the chapter 13 disposable income. The chapter 13 trustees repeatedly made their concerns known to Congress, asking that CMI less deductions be a minimum, not the maximum, but no changes were made.

Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 AM. BANKR. INST. L. REV. 665, 681 (2005). "As in Lamie, 'this alert, followed by the Legislature's nonresponse, should support a presumption of legislature awareness and intention.'" Id. (quoting Lamie, 540 U.S. at 541). However, even if this law is producing unintended results, it is the job of Congress to amend the statute. Lamie, 540 U.S. at 542. "'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" Lamie, 540 U.S. at 542 (quoting US v. Granderson, 511 U.S. 39, 68 (1994)(concurring opinion)).

7

### Calculation of "Projected Disposable Income"

In the event of an objection to confirmation, the debtors are required to provide "projected disposable income" to be received during the applicable commitment period to their unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). The court treats the trustee's motions for confirmation in the subject cases as objections to the debtors' proposed plans, as he eliminates the early termination language included in those plans and disagrees with the debtors' interpretation of projected disposable income and applicable commitment period under the law as amended by BAPCPA. Thus, the question is how to calculate "projected disposable income" in light of the new definition of "disposable income" which includes the current monthly income calculation based upon the six months preceding the bankruptcy filing. 11 U.S.C. §§ 101(10A), 1325(b).

In Hardacre, a case involving an above-median income debtor, the court concluded that "'projected disposable income' must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income." In re Hardacre, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006); *see also* In re Dew, No. 06-40154-JJR-13, 2006 WL 1691130 at *4 (Bankr. N.D. Ala. Jun. 21, 2006)(agreeing with the treatment of "projected disposable income" in Hardacre and stating that one must look to Schedules I and J in order to determine if a below-median income debtor has committed all of her projected disposable income under the plan); In re Grady, No. 06-60726, 2006 WL 1689324 at *3 (Bankr. N.D. Ga. Jun. 21, 2006)(agreeing with Hardacre's analysis of "projected disposable income" and finding that the above-median income debtors could use the projected disposable income figure based upon Schedules I and J rather than Form B22C); In re Kibbe, No. 06-10012-MWV, 2006 WL 1300993 at *2-3 (Bankr. D.N.H. Apr. 14, 2006)(agreeing with Hardacre that projected disposable income is "forward-

8

looking," that it "refers to income that the debtor reasonably expects to receive during the term of her plan," and that, at least for a below-median income debtor, it should be based on the debtor's income and expenses set forth in Schedules I and J).

Aside from using current monthly income to determine a debtor's sources of revenue, Hardacre and its progeny appear to view "projected disposable income" as a term separate and apart from the new definition of "disposable income." *See* Hardacre, 338 B.R. at 723. This court disagrees with that interpretation. As observed by the Honorable Keith M. Lundin, where projected disposable income was a "forward looking concept, requiring bankruptcy courts to 'project' the debtor's income into the future," it has been "transformed by new § 1325(b)(2)." Keith M. Lundin, *Section by Section Analysis of Chapter 13 After BAPCPA*, NC BAR ASSOC. 28TH ANNUAL BANKR. INST. 31 (2005).

In Jass, a case involving above-median income debtors, the court took a slightly different approach. In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006). The court held that it would "presume that the number resulting from Form B22C is the debtor's 'projected disposable income' unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." Id. at 418. Under this interpretation, a debtor can rebut the presumption by providing "specific evidence as to how the numbers reflected on Form B22C are inadequate projections of their future finances." Id. at 419. If the presumption is rebutted, then the court will allow the debtor to use Schedules I and J to determine "projected disposable income." Id.

"Projected disposable income" is a term predating BAPCPA. In a 1995 opinion, the Fourth Circuit explained that "[p]rojected disposable income typically is calculated by multiplying a debtor's monthly

9

income at the time of confirmation by 36 months, the normal duration of a Chapter 13 plan, then determining the portion of that income which is 'disposable' <u>according to the statutory definition</u>." <u>In re Solomon</u>, 67 F.3d 1128, 1132 (4th Cir. 1995)(emphasis added); *see also* <u>Commercial Credit Corp. v. Killough</u>, 900 F.2d 61, 64 (5th Cir. 1990)(stating that, in order to arrive at projected disposable income, one must multiply the debtor's monthly income by the amount of months in the plan and then "assess the amount of the debtor's income that is 'disposable'"). Thus, projected disposable income has been traditionally calculated in conjunction with the definition of disposable income.

This interpretation of projected disposable income is consistent with a plain reading of the statute. Both "projected disposable income" and "disposable income" fall under subsection (b) of § 1325. First, (b)(1) states that projected disposable income is to be applied toward unsecured creditors under the plan. Then, (b)(2) states "For purposes of this subsection, the term "disposable income" means . . . ." 11 U.S.C. § 1325(b)(2). If "disposable income" is not linked to "projected disposable income" then it is just a floating definition with no apparent purpose.

In <u>McGuire</u>, the court held that BAPCPA had not altered the Eighth Circuit's holding in <u>Rowley v. Yarnell</u>, 22 F.3d 190 (8th Cir. 1994) that projected disposable income changes yearly based upon the debtor's actual income and expenses. <u>In re McGuire</u>, No. 06-60054, 2006 WL 1527146 at *5 (Bankr. W.D. Mo. Jun. 1, 2006). This court disagrees with that interpretation of projected disposable income, as it is based upon the old definition of disposable income that included "income which is received by the debtor." 11 U.S.C. § 1325(b)(2) (prior to Oct. 17, 2005). What is now considered "disposable" is based upon historical data---current monthly income derived from the six-month period preceding the bankruptcy filing. 11 U.S.C. §§ 101(10A), 1325(b)(2). The court finds that, in order to arrive at "projected disposable

10

income," one simply takes the calculation mandated by § 1325(b)(2) and does the math.

Some of the cases before the court involve debtors with no disposable income based upon the new statutory calculation method . In Kibbe, the court was faced with a debtor who had no disposable income under the new law and, therefore, asserted that she had no projected disposable income under § 1325(b)(1)(B) to commit to unsecured creditors. In re Kibbe, No. 06-10012-MWV, 2006 WL 1300993 (Bankr. N.H. Apr. 14, 2006). The court disagreed with the debtor's interpretation of "projected disposable income," finding that it was based upon the debtor's current income and expenses pursuant to Schedules I and J. Id. at *3. Thus, even though the debtor had zero disposable income under the new calculation method, the court found that she had projected disposable income to contribute to her unsecured creditors. Id. Because this court follows the Fourth Circuit standard and calculates projected disposable income with specific reference to the statutory definition of disposable income, debtors with no disposable income under the new law have no projected disposable income.

To veterans of Chapter 13 practice, it runs afoul of basic principles to suggest that a debtor with no disposable income can nonetheless propose a confirmable plan. Yet BACPA permits precisely that.[5] Because the pre-BAPCPA definition of "disposable income" calculated a real number rather than a statutory

---

[5] Plan feasibility is no longer dictated by the disposable income calculation. The court disagrees with the outcome in Schanuth where the court determined that the debtors' plan was infeasible because the debtors' plan payments exceeded disposable income as calculated under the new law. In re Schanuth, No. 06-40056, 2006 WL 1515851 *2 (Bankr. W.D. Mo. May 25, 2006). The male debtor received social security benefits that had been excluded from the currently monthly income calculation under § 101(10A)(B). The court said that, in order to propose a feasible plan, the debtors could voluntarily add the social security benefits to their disposable income calculation. Id. This view of feasibility appears to be based upon the old definition of disposable income.

11

artifact, it largely mirrored § 1322(a)(1)'s basic requirement that the debtor have future earnings or income "as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). Because disposable income largely took into consideration all income and all expenses, a debtor with no positive number simply had no means to fund the added costs of a Chapter 13 plan. The result is different under BAPCPA. For any number of reasons, because a debtor has income not counted in the definition of current monthly income, has housing or transportation expenses less than the permissible IRS deductions, has huge secured debt for luxury items that, bizarrely, may be deducted in full as a reasonable and necessary expense, or wishes to continue to contribute to or repay a loan to her 401(k) plan rather than pay her unsecured creditors, a debtor under the new "disposable income" test may show a zero or negative number, yet may be able to make the required showing that she actually has enough income to fund a confirmable plan. The debtor is at least entitled to try.

### **Interpretation of "Applicable Commitment Period"**

The court next looks at the applicable commitment period. The applicable commitment period is calculated by taking the current monthly income of the debtor and the debtor's spouse combined, multiplying it by 12, and then comparing it to the median family income in the applicable state for comparably sized households. 11 U.S.C. § 1325(b)(4)(A). The median family income is calculated and reported by the Bureau of the Census. 11 U.S.C. § 101(39A). If the debtor's current monthly income exceeds the median family income for similarly-sized households, then the applicable commitment period is not less than 5 years. 11 U.S.C. § 1325(b)(4)(A)(ii)(I)-(III). Otherwise, the applicable commitment period is three years. 11 U.S.C. § 1325(b)(4)(A)(i).

The debtors assert that "applicable commitment period" should be interpreted as a multiplier and

not as a specific plan duration. The word "period," read plainly, denotes a portion of time. *See* WEBSTER'S NEW WORLD DICTIONARY 1004 (3d. College ed. 1994). Moreover, the statute clearly states that the only way to shorten an applicable commitment period of 3 or 5 years is "if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)((B). The court finds that "applicable commitment period" is a temporal requirement. *See* In re McGuire, No. 06-60054, 2006 WL 1527146 at *5 (Bankr. W.D. Mo. Jun. 1, 2006); In re Dew, No. 06-40154, 2006 WL 1691130 at *5 (Bankr. N.D. Ala. Jun. 21, 2006); In re Schanuth, No. 06-40056, 2006 WL 1515851 at *4 (Bankr. W.D. Mo. May 25, 2006). If Congress wanted the applicable commitment period to function as a multiplier, it could have stated so in the statute. Schanuth, 2006 WL 1515851 at *4 (noting that Congress specified use of a multiplier in § 1325(b)(4)(A)(ii) when requiring a five-year applicable commitment period for a debtor whose current monthly income "when multiplied by 12" is not less than the median family income).

The cases before the court involve debtors with incomes that span above and below the median family income for similarly-sized households. Thus, in a case involving an above-median income debtor with projected disposable income, the applicable commitment period is 5 years. 11 U.S.C. § 1325(b)(4)(A)(ii)(II)-(III). Otherwise, a debtor with projected disposable income will have an applicable commitment period of 3 years. 11 U.S.C. § 1325(b)(4)(A)(i). The plan period can only be shortened if the debtor fully pays her allowed unsecured claims over a shorter period. 11 U.S.C. § 1325(b)(4)(B).

Because applicable commitment period is a term the statute makes relevant only with regard to the required payment of projected disposable income to unsecured creditors and not to any other plan payments or requirements, it simply does not come into play where no projected disposable income must be taken into account. This is consistent with a plain reading of the Code. "Applicable commitment period" appears in

13

subsection (b) of § 1325. First, in (b)(1)(B), it states that "projected disposable income to be received in the applicable commitment period" is to be applied to unsecured creditors. Then, in (b)(4), it states "For purposes of this subsection, the 'applicable commitment' . . ." is three or five years. The applicable commitment period appears to be exclusively linked to subsection (b) of § 1325. This conclusion is bolstered by § 1329(c), which references applicable commitment period in connection with § 1325(b)(1)(B). 11 U.S.C. § 1329(c). Moreover, § 1322(d), which discusses Chapter 13 plan length, does not mention the term "applicable commitment period." Section 1322(d)(1) states that, for debtors with median income or above, "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1). Section 1322(d)(2) states that, for debtors with below-median income, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." These provisions establish a maximum plan length, but they do not require a minimum commitment period. Accordingly, a debtor with no projected disposable income is free to meet the other confirmation requirements of § 1322 and § 1325 in whatever period of time he may feasibly do so. Obviously, secured and priority creditors entitled to payment in full under the plan would rather be paid sooner than later, and there is no reason to extend plans artificially if there is no requirement of a dividend to be paid to unsecured creditors over time.

### Good Faith Requirement

Section 1325(a)(3) allows a court to confirm a plan that has been proposed in good faith. 11 U.S.C. § 1325(a)(3). The trustee asserts that the debtors are failing to comply with the good faith requirement by not proposing plans that make substantial repayments to unsecured creditors, citing Deans v. O'Donnell, 692 F.2d 968 (4th Cir. 1982). The Fourth Circuit in Deans made clear that there was no

14

minimum repayment requirement in order to meet the good faith test. Deans, 692 F.2d at 971. The court stated, however, that "failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts." Id. at 972. But if a debtor follows the calculation method for determining disposable income under § 1325(b)(2), the debtor is not manipulating the statute. While this figure may differ from what was historically known to be "disposable income," the debtor is simply complying with the new law.

This court agrees with the opinion rendered by the Bankruptcy Court for the Middle District of North Carolina that the debtor's disposable income must be determined under § 1325(b) and not as an element of good faith under § 1325(a)(3). In re Barr, 341 B.R. 181, 186 (Bankr. M.D.N.C. 2006); *see also* Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 AM. BANKR. INST. L. REV. 665, 681 (2005)("[T]he very specific language of section 1325(b)(2) displaces any such use of chapter 13 "good faith," even assuming that phrase has any relevance to minimum payments after the 1984 amendments. Once again, Congress demonstrated a determination to replace judicial discretion under general standards with precise rules-based calculations. One can understand why bankruptcy judges would chafe at such restrictions, but that does not mean that Congress did not mean what it said."). So long as the debtor calculates the projected disposable income with specific reference to the new definition of disposable income and commits that projected disposable income to pay unsecured creditors for the applicable commitment period, she is in good faith compliance with the Code. § 1325(b)(1)(B). As noted above, the commitment period may be decreased if the debtor is able to fully pay her allowed unsecured claims during a shorter period of time. If the debtors have no projected disposable income, then there is no applicable commitment period.

This district has run a hugely successful Chapter 13 program for decades. Administered by four veteran trustees under established local rules and principles that generated little litigation (and thus transactional costs), success rates have approached 50% and returned millions of dollars to creditors (secured and unsecured) throughout North Carolina and the nation.[6] The system was not broken. Whether it can survive the changes mandated by BAPCPA remains to be seen. But the court's job is to interpret the new statute as clearly written, not to nostalgically preserve the past by seizing on isolated words such as "good faith" and "projected" and inflating their meaning beyond justification.

Chapter 13 plans may be confirmed in these cases in accordance with this order. In the cases on Attachment A showing disposable income under the BAPCPA calculation method, the debtors' objections are overruled, and the plans must make the disposable income shown available for unsecured creditors[7] during the requisite applicable commitment period. In those cases on Attachment A showing no disposable income under the BAPCPA calculation method, the debtors' objections are sustained, and the plans may terminate when payments sufficient to meet all of the other confirmation requirements of § 1322 and § 1325 are made.

---

[6] In 2005, the Chapter 13 trustees in this district disbursed a total of $63,662,191.17 to creditors, and $17,718,829.62 of those monies went to unsecured creditors.

[7] The court concurs with the view expressed in In re Wilbur, No. 06-20104, 2006 WL 1687586 (Bankr. D. Utah Jun. 21, 2006) that this is the amount payable to unsecured creditors other than priority creditors; credit for payment of priority claims has already been provided the debtors in the calculation of disposable income by the subtraction permitted by § 707(b)(2)(A)(iv), as incorporated by § 1325(b)(3).

**Attachment A**

| Case | Disposable Income Pre-BAPCPA Calculation | Disposable Income BAPCPA Below Median Calculation | Disposable Income BAPCPA Above Median Calculation |
|---|---|---|---|
| Alexander 06-00324-8-JRL | $226.00 | -$1,152.00 | N/A |
| Bowens 06-00147-8-JRL | $438.00 | -$604.00 | N/A |
| Braswell 06-00318-8-JRL | $371.00 | $435.46 | N/A |
| Bulluck 06-00149-8-JRL | $543.00 | $107.23 | N/A |
| Cherry 06-00089-8-JRL | $343.00 | -$449.34 | N/A |
| Elliott 06-00811-8-JRL | $571.00 | -$1,465.83 | N/A |
| Ezell 05-10689-8-JRL | $452.00 | N/A | $164.01 |
| Foster 06-00300-8-JRL | $553.00 | $74.85 | N/A |
| Johnson 05-10652-8-JRL | $432.00 | -$167.27 | N/A |
| Johnston 05-10625-8-JRL | $576.00 | N/A | -$13.44 |
| Jones 05-10597-8-JRL | $520.00 | $269.61 | N/A |
| Jordan 05-10617-8-JRL | $1,195.00 | N/A | -$105.74 |
| Knight 06-00128-8-JRL | $586.00 | N/A | -$168.24 |

| | | | |
|---|---|---|---|
| Nordan<br>05-10699-8-JRL | $322.00 | $1,110.24 | N/A |
| Pope<br>06-00027-8-JRL | $256.00 | $317.33 | N/A |
| Richardson<br>06-00049-8-JRL | $284.00 | $534.55 | N/A |
| Rudd<br>06-00064-8-JRL | $270.00 | $551.38 | N/A |
| Stokely<br>05-10598-8-JRL | $774.00 | N/A | $66.38 |
| Thomas<br>06-00074-8-JRL | $455.00 | N/A | -$50.69 |
| Watson<br>05-10612-8-JRL | $349.00 | $1,307.76 | N/A |
| Webb<br>06-00098-8-JRL | $403.00 | $1,233.65 | N/A |
| Whitley<br>06-00299-8-JRL | $201.00 | -$1,541.59 | N/A |
| Williams<br>05-10619-8-JRL | $672.00 | N/A | $225.17 |
| Wilson<br>06-00177-8-JRL | $307.00 | -$1,297.12 | N/A |
| Woodard<br>05-10679-8-JRL | $382.00 | -$62.93 | N/A |

"END OF DOCUMENT"